Heedong Chae (SBN: 263237)
Email: hdchae@lucemlaw.com
**LUCEM, PC**
660 South Figueroa St., Suite 2300
Los Angeles, CA 90017
Phone: 213-387-3630
Fax: 213-863-6332

*Attorneys for Plaintiff,*
*SUN NONG DAN FOODS, INC.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUN NONG DAN FOODS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>DAEHO DINING GROUP, INC., a California corporation; DAEHO DUBLIN, INC., a California corporation; DAEHO CONCORD, INC., a California corporation; DAEHO LAS VEGAS, INC., a California corporation; DAEHO HWANG, an individual; IL PARK, an individual; CHAN WON PARK, an individual; DOES 1 through 10, inclusive,<br><br>Defendants. | Case No:<br><br>**COMPLAINT FOR**<br>**1. False Designation of Origin (15 U.S.C. § 1125(a)(1)(A));**<br>**2. False Advertising (15 U.S.C. § 1125(a)(1)(B));**<br>**3. Trade Dress Infringement (15 U.S.C. § 1125(a));**<br>**4. Trade Secret Misappropriation (18 U.S.C. § 1836);**<br>**5. Unfair Competition (Cal. Bus. & Prof. Code §§ 17200 et seq.);**<br>**6. False Advertising (Cal. Bus. & Prof. Code §§ 17500 et seq.); and**<br>**7. Trade Secret Misappropriation (Cal. Civ. Code §§ 3426 et seq.**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sun Nong Dan Foods Inc., for its complaint against Defendants Daeho Dining Group Inc., Daeho Concord Inc., Daeho Dublin Inc., Daeho Las Vegas Inc., Daeho Hwang, Il Park, Chan Won Park, and Does 1-10 alleges as

follows:

## JURISDICTION AND VENUE

1.      This is an action for False Designation of Origin under 15 U.S.C. § 1125(a)(1)(A)), False Advertising under 15 U.S.C. § 1125(a)(1)(B), Trade Dress Infringement under 15 U.S.C. § 1125(a), Trade Secret Misappropriation under 18 U.S.C. § 1836, Unfair Competition under Cal. Bus. & Prof. Code §§ 17200 *et seq.*, False Advertising under Cal. Bus. & Prof. Code §§ 17500 *et seq.*, and Trade Secret Misappropriation under Cal. Civ. Code §§ 3426 *et seq*.

2.      This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a), and 28 U.S.C. §§ 1331, 1338(a) and (b), and 1367.

3.      This Court has personal jurisdiction over all the Defendants by virtue of their transacting, doing, and soliciting business in this District, and because a substantial part of the relevant events occurred in this District.

4.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b).

## PARTIES

5.      Plaintiff Sun Nong Dan Foods, Inc. (hereinafter, "Sun Nong Dan" or "Plaintiff"), is a corporation organized and existing under the laws of State of California, with its principal place of business at 3470 W. 6th Street STE 7, Los Angeles, CA 90020.

6.      Plaintiff is informed and believes, and thereon alleges, that Defendant Daeho Dining Group, Inc. ("Daeho Dining Group"), is a corporation organized and existing under the laws of the State of California, with its principal place of business at 1610 Post St STE 303, San Francisco, CA 94115.

7.      Plaintiff is informed and believes, and thereon alleges, that Defendant Daeho Concord, Inc. ("Daeho Concord"), is a corporation organized and existing under the laws of the State of California, with its principal place of business at 1610 Post St STE 303, San Francisco, CA 94115.

8.      Plaintiff is informed and believes, and thereon alleges, that Defendant

Daeho Dublin, Inc. ("Daeho Dublin"), is a corporation organized and existing under the laws of the State of California, with its principal place of business at 1620 Post St, San Francisco, CA 94115.

9. Plaintiff is informed and believes, and thereon alleges, that Defendant Daeho Las Vegas, Inc. ("Daeho Las Vegas"), is a corporation organized and existing under the laws of the State of California, with its principal place of business at 1610 Post St STE 303, San Francisco, CA 94115.

10. Plaintiff is informed and believes, and thereon alleges, that Defendant Daeho Hwang ("Mr. Hwang"), is an individual with an address at 1610 Post St STE 303, San Francisco, CA 94115.

11. Plaintiff is informed and believes, and thereon alleges, that Defendant Il Park ("Mr. I. Park"), is an individual with an address at 1610 Post St STE 303, San Francisco, CA 94115.

12. Plaintiff is informed and believes, and thereon alleges, that Defendant Chan Won Park ("Mr. C. Park"), is an individual with an address at 1610 Post St STE 303, San Francisco, CA 94115.

13. Named Defendants, and Does 1 – 10, may be collectively referred to as "Defendants" or "Daeho".

14. Plaintiff is unaware of the true names and capacities, whether individual, corporate, or otherwise, of the Defendants named herein as Does 1 through 10, inclusive, but is informed and believes, and thereon alleges, that each of the fictitiously named defendants engaged in, or is in some manner responsible for, the wrongful conduct alleged herein. Plaintiff therefore sues these defendants by such fictitious names and will amend this complaint to state their true names and capacities when such names have been discovered.

## FACTUAL ALLEGATIONS

15. Sun Nong Dan, established in 2013, stands as a critically acclaimed and renowned Korean food restaurant in California, distinguished for its unique offerings

and ambiance. Sun Nong Dan has not only cemented its reputation within the state but has also garnered national and international acclaim, attracting customers nationwide and internationally. Sun Nong Dan is considering and reviewing expansion into other states and countries.

16.     Exhibit A annexed hereto furnishes evidence of Sun Nong Dan's fame, showcasing notable mentions from the Los Angeles Times, and other articles, as well as consistently high Yelp ratings. Sun Nong Dan restaurants have garnered thousands of Yelp reviews, consistently maintaining a rating of 4 or 4.5 stars.

17.     Sun Nong Dan's flagship dish, "galbi jjim", along with its variants, has played a pivotal role in Sun Nong Dan's growing recognition.

18.     Sun Nong Dan's galbi jjim features braised short ribs combined with ddukbokki and vegetables, all topped with cheese that is torched before customers until it drapes over the ribs. The dish is authentically presented on a black stone plate, bordered by a silver metal rim, and is set on a wooden base for serving. Accompanying the galbi jjim are three side dishes: kimchi, reddish kimchi, and chives. To enhance the flavor, a distinctive soy sauce blend infused with jalapeno and onion is provided. Each of these accompaniments is served in matching silver circular dishes. This galbi jjim presentation has become famous that consumers recognize it as the flagship dish of Sun Nong Dan, constituting Sun Nong Dan's trade dress.

19.     In addition to galbi jjim, Sun Nong Dan offers a variety of dishes, including various types of sulung tang and soo yook.

20.     Exhibit B annexed hereto is an exemplary menu of Sun Nong Dan.

21.     Sun Nong Dan has devoted significant effort and resources into developing its unique recipes for galbi jjim, the accompanying three side dishes, soy sauce, as well as other dishes such as sulung tang and soo yook. Additionally, Sun Nong Dan has developed its culinary processes and business operations to handle and promptly serve large numbers of orders. These proprietary developments are

confidential assets of Sun Nong Dan, protected as trade secrets by the security measures in place.

22.     Sun Nong Dan currently operates restaurants in four locations: Los Angeles Western, Los Angeles 6th Street, Rowland Heights, and San Gabriel. The company is currently planning to expand to other regions, states, or even countries, with the San Francisco Bay Area being one of the targeted locations.

23.     Sun Nong Dan owns trademark registrations with the U.S. Patent and Trademark Office for the trademarks "Sun Nong Dan" (Reg. No. 4763384) and the unique "Sun Nong Dan" logo (Reg. No. 7130715). *See* Exhibit C for registration details.

**MR. C. PARK'S EMPLOYMENT AT SUN NONG DAN**

24.     In or about 2017, Mr. I Park approached Sun Nong Dan seeking employment of his younger brother Mr. C. Park. Mr. C. Park informed Sun Nong Dan that he had no experience in Korean restaurants. However, based on Mr. I Park's personal reference, Sun Nong Dan decided to hire him.

25.     Mr. C. Park held various roles at Sun Nong Dan, one of which was a kitchen assistant. To gain comprehensive knowledge of the operations, he volunteered to rotate through different Sun Nong Dan restaurants, namely Rowland Heights, San Gabriel, and Los Angeles 6th Street. This experience granted him access to Sun Nong Dan's various confidential proprietary recipes and business practices. Given the distances between these restaurants, it is unusual for someone to volunteer to work at all of them unless he intends to obtain confidential business practices, especially considering that certain confidential matters were proprietary to just one of the restaurants at that time.

26.     Throughout Mr. C. Park's employment, Sun Nong Dan consistently stressed and emphasized the confidentiality of its recipes and unique business methods to Mr. C. Park. He, in turn, acknowledged and repeatedly assured the management of his commitment to preserving their confidentiality.

27.     During Mr. C. Park's employment at Sun Nong Dan, he worked in roles of a kitchen assistant or other positions, but never as a chef or head chef. He had made it clear that he had no prior experience with Korean cuisine when he joined Sun Nong Dan, making him an unlikely candidate for a chef or head chef position.

28.     In or about 2018, after working for less than a year, Mr. C. Park left Sun Nong Dan, expressing an interest in starting a Chinese restaurant venture. At this juncture, Sun Nong Dan once again reminded him of his obligation to maintain confidentiality of Sun Nong Dan's recipes and business practices. He reaffirmed his commitment not to utilize any of Sun Nong Dan's confidential protected recipes and business practices.

**OPENING OF DAEHO KALBIJJIM**

29.     Upon information and belief, Mr. C. Park, in collusion with his elder brother, Mr. I. Park, was employed at Sun Nong Dan with the intent of stealing and misappropriating the restaurant's confidential proprietary recipes and business practices. Subsequently, after Mr. C. Park left Sun Nong Dan, he and Mr. I Park, in partnership with Mr. Hwang, started a business venture that copied and replicated the Sun Nong Dan establishment.

30.     Upon information and belief, in or about 2018 or 2019, immediately after leaving Sun Nong Dan, Mr. C. Park collaborated with Mr. I. Park and Mr. Hwang with the intention of opening an imitate, counterfeit Sun Nong Dan restaurant under the name "Daeho Kalbijjim" in San Francisco Bay Area.

31.     Sun Nong Dan never provided authorization or permission to Mr. C. Park, Mr. I. Park, Mr. Hwang, or any other Defendants to use its secret recipes and business practices, or to claim any affiliation, association, or connection with Sun Nong Dan. No Defendant has been, or is, affiliated, associated, connected, or sponsored by Sun Nong Dan.

32.     Upon information and belief, Daeho opened its first Sun Nong Dan counterfeit restaurant around February 2019.

33.     While preparing for opening a new restaurant, Daeho began to disseminate false statements alleging an affiliation, association, or connection to Sun Nong Dan.

34.     Attached as Exhibit D are employee hiring posts dated January 27, 2019, and February 27, 2019, asserting that a "jackpot restaurant" will open in San Francisco, spearheaded by a former head chef from Sun Nong Dan. This statement is false, as no current or former chef or head chef from Sun Nong Dan has affiliations with Daeho.

35.     Upon hearing the false rumor about Sun Nong Dan's new opening in the San Francisco Bay Area, numerous customers, mistakenly believing there was an affiliation, visited Daeho restaurant, drawn by their interest in the renowned establishment.

36.     By capitalizing on Sun Nong Dan's brand value and reputation, and copying and replicating its restaurant, including its confidential recipes and business operations, Daeho quickly established its presence and expanded by opening additional locations in Milpitas, CA; H-Mart in San Francisco, CA; San Mateo, CA; and Las Vegas, NV.

37.     Daeho has misappropriated Sun Nong Dan's confidential proprietary recipes and presentation of dishes. Just like Sun Nong Dan, Daeho Kalbijjim's main dish is galbi jjim, which is served with three side dishes and a soy sauce — crafted from Sun Nong Dan's confidential, proprietary recipes — and presented identically. Exhibit E shows the identical presentation of the galbi jjim from Sun Nong Dan and Daeho Kalbijjim.

38.     Just like Sun Nong Dan, Daeho's galbi jjim features braised short ribs combined with ddukbokki and vegetables, all topped with cheese that is torched before customers until it drapes over the ribs. The dish is presented on a black stone plate, bordered by a silver metal rim, and is set on a wooden base for serving. Accompanying the galbi jjim are three side dishes: kimchi, reddish kimchi, and

chives. To enhance the flavor, a distinctive soy sauce blend infused with jalapeno and onion is provided. Each of these accompaniments is served in matching silver circular dishes. The three side dishes, along with the soy sauce, are crafted using Sun Nong Dan's recipes, and their presentations are identical, as shown in Exhibit E.

39.     Beyond galbi jjim, Daeho Kalbijjim also serves identical varieties of sulung tang and soo yook.

40.     Exhibit F annexed hereto features exemplary menus of Sun Nong Dan.

41.     Exhibit G annexed hereto features exemplary menus of Daeho Kalbijjim.

42.     Due to the numerous similarities and identicalities, many customers and vendors have approached Daeho with inquiries about a potential connection or relationship with Sun Nong Dan.

43.     Upon information and belief, Daeho has disseminated various false statements concerning its relation to Sun Nong Dan, such as claims that Sun Nong Dan opened a restaurant in the San Francisco Bay Area under the name Daeho Kalbijjim; Daeho purchased Sun Nong Dan's confidential recipes; the head chef from Sun Nong Dan opened Daeho Kalbijjim; the chef from Sun Nong Dan opened Daeho Kalbijjim; the wife of Sun Nong Dan's owner opened Daeho Kalbijjim; etc.

44.     There are a large number of pieces of evidence circulating on the Internet regarding the false statements, which show that consumers believe them to be true. For example, a Reddit post titled "Daeho in SF or Sun Nong Dan in LA" states, "They used be the same restaurant, but due to some franchise dispute SND in the Bay broke off and became Daeho many years ago." *See* Exhibit H.

45.     Yelp reviews state, "Daeho has the same owner/founding chef as the famous Sun Nong Dan in LA"; "the head chef is the same one from Sun Nong Dan in LA; "this joint is rumored to be owned by the same folks as Sun Nong Dan"; "My friend told me the chef of Sun Nong Dan opened up a restaurant here"; "I heard the chef from Sun Nong Dan in LA opened up this spot"; "apparently, the owner has a place in LA called Sun Nong Dan and this place is serving the same food"; and other

similar statements. *See* Exhibit I for Yelp reviews for Daeho Kalbijjim restaurants.

46.     These postings manifestly demonstrate the breadth to which Daeho has spread false statements regarding its relation with Sun Nong Dan. For such a large number of customers to believe these false statements as true, it would require considerable and organized efforts by Daeho to create and disseminate them. This is merely the tip of the iceberg, and Sun Nong Dan requires discovery to ascertain the full severity of all violations committed by Daeho.

47.     Even though Daeho has never been, nor is currently, affiliated, associated, connected, or sponsored by Sun Nong Dan, consumers have come to identify Daeho Kalbijjim with Sun Nong Dan due to Daeho's extensive promotional efforts, with Daeho's dishes replicating the authentic offerings of Sun Nong Dan.

48.     Daeho's employees were trained and instructed to respond in a specific way when asked by customers or vendors about the relationship between Daeho and Sun Nong Dan. This was done with the intent of creating the false impression that Sun Nong Dan operates under the name of Daeho Kalbijjim in the San Francisco Bay Area. Rather than denying a relationship between Daeho and Sun Nong Dan, they were specifically guided to affirm the relation and state that their food is identical to Sun Nong Dan's offerings.

49.     In late 2021, Sun Nong Dan started receiving customer complaints about Daeho Kalbijjim, particularly regarding its inferior food quality. Customers of Sun Nong Dan, who had visited Daeho, expressed dissatisfaction with Daeho's inferior and subpar offerings and sought clarification on whether Daeho was affiliated with Sun Nong Dan.

50.     Customers informed Sun Nong Dan that they had heard various statements: that Daeho is a Sun Nong Dan restaurant, that Daeho purchased Sun Nong Dan's secret recipe, or that the wife of Sun Nong Dan's owner opened Daeho Kalbijjim in San Francisco.

51.     The pandemic delayed Sun Nong Dan's investigation, which ultimately

revealed the Park brothers' involvement and Daeho's extensive wrongful acts.

52.     Daeho misappropriated Sun Nong Dan's confidential recipes and business operations, replicating the restaurant and its offerings. Furthermore, Daeho capitalized on Sun Nong Dan's reputation by disseminating false statements. As a result, Daeho quickly gained recognition in the San Francisco Bay Area, attracting numerous customers, securing undeserved profits, and opening additional restaurants.

53.     Daeho replicated Sun Nong Dan so meticulously and extensively that customers began to inquire if Sun Nong Dan had opened a new restaurant in the San Francisco Bay Area. Additionally, the customer community on Yelp has noted the striking similarities between the two establishments.

54.     Daeho has misappropriated the goodwill and reputation of Sun Nong Dan. In a move marked by bad faith, they utilized proprietary and confidential trade secrets that Mr. C. Park obtained during his employment at Sun Nong Dan, opening a counterfeit restaurant, Daeho Kalbijjim. Daeho duplicated Sun Nong Dan's entire menu and mimicked every aspect of its dish presentation and business practices, clearly intending to capitalize on Sun Nong Dan's reputation and clientele. The defendants' misappropriation is comprehensive, unethical, and constitutes blatant commercial piracy.

## COUNT 1:

## FALSE DESIGNATION OF ORIGIN, FALSE AND FRAUDULENT REPRESENTATION, AND FEDERAL UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)

55.     Sun Nong Dan re-alleges each and every allegation set forth in paragraphs 1 through 54 above, inclusive, and incorporates them by reference herein.

56.     Sun Nong Dan owns trademark registrations with the US Patent and Trademark Office for the trademarks "Sun Nong Dan" (Reg. No. 4763384) and the unique "Sun Nong Dan" logo (Reg. No. 7130715). *See* Exhibit C.

57.     Defendants have deliberately disseminated false statements about their

connection to Sun Nong Dan in interstate commerce, without Sun Nong Dan's consent, as alleged above. Combined with Defendants' misappropriation of Sun Nong Dan's recipes, presentation, and business practices, this constitutes a false designation of origin likely to cause confusion, mistake, and deception regarding source, sponsorship, affiliation, and/or connection in public perception.

58.    Defendants have intentionally and willfully disseminated various false statements, such as claims that Sun Nong Dan opened a restaurant in the San Francisco Bay Area under the name Daeho Kalbijjim; Daeho purchased Sun Nong Dan's confidential recipes; the head chef from Sun Nong Dan opened Daeho Kalbijjim; the chef from Sun Nong Dan opened Daeho Kalbijjim; the wife of Sun Nong Dan's owner opened Daeho Kalbijjim; and others.

59.    Although Defendants have never been, nor are currently, affiliated, associated, connected with, or sponsored by Sun Nong Dan, consumers have associated Daeho with Sun Nong Dan and Daeho's dishes with Sun Nong Dan's authentic offerings due to Defendants' extensive, false, and misleading promotional efforts.

60.    Defendants' flagrant and intentional misappropriation of Sun Nong Dan's confidential proprietary recipes, dish presentations, and business practices, as well as their distribution of false statements, are likely to cause confusion, mistake, deception, and mislead or defraud consumers who associate Daeho Kalbijjim with Sun Nong Dan and believe Daeho's dishes mirror the authentic offerings of Sun Nong Dan. Such wrongful acts have indeed led to consumer confusion, mistake, and deception.

61.    Defendants have obtained profits and unjust enrichment through their deliberate willful infringement under the Lanham Act, profiting from selling counterfeit dishes and exploiting Sun Nong Dan's trademarks, reputation, and goodwill.

62.    Consequently, Sun Nong Dan has sustained injuries in an amount not

1   yet fully determined, while Defendants have been unjustly enriched through their

2   deceptive practices towards consumers and misappropriation of Sun Nong Dan's

3   goodwill, confidential recipes, presentations, and business practices.

4        63.    As a result of Defendants' wrongful actions, Sun Nong Dan has suffered

5   and will continue to suffer irreparable harm for which there is no adequate remedy at

6   law. Unless Defendants' infringing acts are enjoined by this Court, Sun Nong Dan

7   will continue to suffer irreparable harm.

8        64.    Defendants' continued and knowing wrongful acts without Sun Nong

9   Dan's consent or authorization constitute willful infringement of Sun Nong Dan's

10   trademark rights in violation of 15 U.S.C. § 1125(a).

11        65.    Defendants' acts have been knowing, intentional, wanton, and willful.

12   The principles of equity warrant an award to Sun Nong Dan of treble damages and

13   profits, attorney's fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

14                            **<u>COUNT 2:</u>**

15              **<u>FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)</u>**

16        66.    Sun Nong Dan re-alleges each and every allegation set forth in

17   paragraphs 1 through 65 above, inclusive, and incorporates them by reference herein.

18        67.    Defendants have made false or misleading descriptions or

19   representations of fact in interstate commercial advertising or promotion regarding

20   their dishes and their connection to Sun Nong Dan. These statements misrepresent

21   the nature, characteristics, qualities, or geographic origin of both Daeho's and Sun

22   Nong Dan's dishes.

23        68.    Defendants have deliberately disseminated false statements about their

24   connection to Sun Nong Dan in interstate commerce, without Sun Nong Dan's

25   consent as alleged above. Along with Defendants' misappropriation of Sun Nong

26   Dan's recipes, presentation, and business practices, this constitutes a false

27   designation of origin likely to cause confusion, mistake, and deception regarding the

28   source, sponsorship, affiliation, and/or connection in public perception.

69.    Defendants have intentionally and willfully disseminated various false statements, including claims that Sun Nong Dan opened a restaurant in the San Francisco Bay Area under the name Daeho Kalbijjim; that Daeho purchased Sun Nong Dan's confidential recipes; that the head chef from Sun Nong Dan opened Daeho Kalbijjim; and that the wife of Sun Nong Dan's owner opened Daeho Kalbijjim.

70.    Although Defendants have neither been nor are currently affiliated, associated, connected with, or sponsored by Sun Nong Dan, consumers have associated Daeho with Sun Nong Dan and Daeho's dishes with Sun Nong Dan's authentic offerings due to Defendants' extensive, false, and misleading promotional efforts.

71.    Defendants' flagrant and intentional misappropriation of Sun Nong Dan's confidential proprietary recipes, dish presentations, and business practices, along with their distribution of false statements, are likely to cause confusion, mistake, deception, and mislead or defraud consumers who associate Daeho Kalbijjim with Sun Nong Dan and believe Daeho's dishes mirror the authentic offerings of Sun Nong Dan. Such wrongful acts have indeed led to consumer confusion, mistake, and deception.

72.    Defendants have knowingly or willfully misrepresented the public regarding the facts above.

73.    Those advertisements actually deceived or had the tendency to deceive a substantial segment of their audience.

74.    Defendants' commercial messages and statements are either literally false or misleading and intended to deceive the market, the public, consumers, and potential consumers, including consumers of Sun Nong Dan.

75.    Defendants' misrepresentations were material, in that they are likely to influence the purchasing decision and were made in bad faith for the purpose of deceiving the market, the public, consumers, potential consumers, including

consumers of Sun Nong Dan. Defendants caused their falsely advertised dishes to enter interstate commerce.

76.    Sun Nong Dan has been or is likely to be injured as a result of the foregoing, either by direct diversion of sales from itself to the defendant, or by lessening of the goodwill which its dishes enjoy with the buying public.

77.    Defendants have obtained profits and unjust enrichment through their deliberate willful infringement under the Lanham Act, profiting from selling counterfeit dishes and exploiting Sun Nong Dan's trademarks, reputation, and goodwill.

78.    Sun Nong Dan has sustained injuries in an amount not yet fully determined, while Defendants have been unjustly enriched through their deceptive practices towards consumers and misappropriation of Sun Nong Dan's goodwill, confidential recipes, presentations, and business practices.

79.    As a result of Defendants' wrongful actions, Sun Nong Dan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Unless Defendants' infringing acts are enjoined by this Court, Sun Nong Dan will continue to suffer irreparable harm.

## COUNT 3:

## TRADE DRESS INFRINGEMENT UNDER 15 U.S.C. § 1125(a)

80.    Sun Nong Dan re-alleges each and every allegation set forth in paragraphs 1 through 79 above, inclusive, and incorporates them by reference herein.

81.    Sun Nong Dan's trade dress includes its distinctive galbi jjim presentation: braised short ribs combined with ddukbokki and vegetables, all topped with cheese that is torched before customers until it drapes over the ribs; the dish is presented on a black stone plate, bordered by a silver metal rim, and set on a wooden base for serving; and three side dishes of kimchi, radish kimchi, and chives, along with soy sauce containing jalapeno and onion, all served in matching silver circular dishes.

82.    Sun Nong Dan's trade dress has acquired secondary meaning as consumers have come to recognize it as identifying Sun Nong Dan as the source of the high-quality galbi jjim.

83.    Defendants' galbi jjim has so closely imitated and/or copied Sun Nong Dan's galbi jjim that the consuming public has been confused and will continue to be confused as to the source or origin of Defendants' galbi jjim. Further, consumers erroneously believe and will continue to erroneously believe that Defendants' galbi jjim originates from Sun Nong Dan. In the eyes of an ordinary observer, giving such attention as a purchaser usually gives, Sun Nong Dan's galbi jjim and Defendants' galbi jjim are substantially the same, and the resemblance is such that it deceives an observer, inducing them to purchase Defendants' galbi jjim under the supposition that it is Sun Nong Dan's.

84.    As described above, Defendants intentionally copied Sun Nong Dan's trade dress with the intention to create a galbi jjim confusingly similar in appearance to Sun Nong Dan's. Defendants have succeeded in producing a galbi jjim which is confusingly similar in appearance to Sun Nong Dan's.

85.    Sun Nong Dan's galbi jjim and Defendants' galbi jjim are strikingly similar, substantially duplicated, virtually identical, substantially identical, remarkably similar, essentially duplicated, and/or closely imitated.

86.    Defendants' acts of trade dress infringement have caused and continue to cause damages and injury to Sun Nong Dan.

87.    Sun Nong Dan may recover for its damages an award to compensate Sun Nong Dan for the injuries and damages it has sustained as a result of Defendants' conduct, which violates § 1125(a) of the Lanham Act.

88.    Because Defendants' acts were intentional, willful, and/or deliberate, Sun Nong Dan is entitled to an award of treble damages under the Lanham Act.

89.    Sun Nong Dan is entitled to an award of pre-judgment interest for the damages sustained as a result of Defendants' wrongful conduct.

90.     Defendants' wrongful, malicious, fraudulent, deliberate, willful, and/or intentional conduct makes this an exceptional case, entitling Sun Nong Dan to an award of attorney's fees and costs under the Lanham Act.

91.     Sun Nong Dan has no adequate remedy at law; Sun Nong Dan has suffered and continues to suffer irreparable harm as a result of Defendants' acts and is therefore entitled to preliminary and permanent injunctive relief to enjoin Defendants' wrongful conduct.

92.     Sun Nong Dan has no adequate remedy at law; Sun Nong Dan has suffered and continues to suffer irreparable harm as a result of Defendants' acts and is therefore entitled to preliminary and permanent injunctive relief to enjoin Defendants' wrongful conduct.

## **COUNT 4:**

## **TRADE SECRET THEFT AND MISAPPROPRIATION**

## **UNDER 18 U.S.C. §§ 1836 _et seq_.**

93.     Sun Nong Dan re-alleges each and every allegation set forth in paragraphs 1 through 92 above, inclusive, and incorporates them by reference herein.

94.     Sun Nong Dan has developed and owns, and at all relevant times, has been in possession of its trade secrets, namely recipes and business practices. These trade secrets include, but are not limited to, galbi jjim recipes, recipes for three side dishes, a soy sauce recipe, and order-taking, cooking, and serving methods. Sun Nong Dan's trade secrets relate to its dishes used in, or intended for use in, interstate commerce.

95.     Sun Nong Dan's trade secrets are proprietary and not generally known to others who could gain economic value from their disclosure or use. The independent economic value derived from these secrets enables Sun Nong Dan to maintain a leadership position in its industry, particularly in the Korean food sector, featuring dishes such as galbi jjim, sulung tang, and soo yook.

96.     Sun Nong Dan has consistently made reasonable efforts to protect the

secrecy of its trade secrets by restricting access to essential personnel, requiring confidentiality agreements, and conducting periodic training on trade secret confidentiality.

97.    As described above, Defendants have illegally obtained and continue to misappropriate Sun Nong Dan's trade secrets, using them to market and sell dishes throughout the United States, including in California and this District, without Sun Nong Dan's consent and with knowledge or reason to know that these secrets were acquired through improper means.

98.    Unless restrained by this Court, Defendants' wrongful conduct in misappropriating Sun Nong Dan's trade secrets will cause significant and irreparable harm to Sun Nong Dan's business.

99.    Sun Nong Dan has no adequate legal remedy for its current and future injuries, especially as Defendants' use of its trade secrets has enabled them to rapidly establish their business, hindering Sun Nong Dan's market entry in the San Francisco Bay Area and Las Vegas.

100.   Sun Nong Dan is entitled to damages for actual losses caused by Defendants' misappropriation of its trade secrets and/or any unjust enrichment enjoyed by Defendants. In the event that actual loss and unjust enrichment damages are not provable, Sun Nong Dan is entitled to receive a reasonable royalty for the use made of the trade secrets by Defendants, together with interest and costs as determined by the Court.

101.   Defendants' willful and malicious misappropriation of Sun Nong Dan's trade secrets entitles Sun Nong Dan to exemplary damages equal to twice the actual damages caused by the misappropriation, under 18 U.S.C. § 1836, as well as reasonable attorney fees and costs, including expert witness fees.

## COUNT 5:

## UNLAWFUL, UNFAIR, FRAUDULENT BUSINESS PRACTICES UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 *et seq.*

102. Sun Nong Dan re-alleges each and every allegation set forth in paragraphs 1 through 101 above, inclusive, and incorporates them by reference herein.

103. Defendants' wrongful acts, as detailed above, constitute unlawful, unfair, or fraudulent business acts and practices under the California's Unfair Competition Law (UCL). *See* California Business & Professions Code § 17200 et seq.

104. These wrongful acts have proximately caused, and will continue to cause, Sun Nong Dan substantial injury. This includes loss of customers, dilution of goodwill, confusion among existing and potential customers, and diminishment of the value of Sun Nong Dan's goods and services. The harm is both imminent and irreparable, and the extent of damage sustained by Sun Nong Dan will be difficult to ascertain if these acts continue. Therefore, Sun Nong Dan lacks an adequate remedy at law.

105. Defendants' intentional and wrongful acts have caused, and will continue to cause, irreparable harm to Sun Nong Dan, for which there is no adequate remedy at law. This entitles Sun Nong Dan to preliminary and permanent injunctive relief. Additionally, Sun Nong Dan is entitled to full restitution under the law.

<u>**COUNT 6:**</u>

<u>**FALSE ADVERTISING UNDER CALIFORNIA BUSINESS &**</u>

<u>**PROFESSIONS CODE §§ 17500 *et seq.***</u>

106. Sun Nong Dan re-alleges each and every allegation set forth in paragraphs 1 through 105 above, inclusive, and incorporates them by reference herein.

107. The False Advertising Law (FAL), as codified in Business & Professions Code section 17500, prohibits any statement in connection with the sale of goods that is "untrue or misleading". See Cal. Bus. & Prof. Code § 17500.

108. As previously alleged, Defendants knew, or should have reasonably

1  known, that their publicly disseminated statements and omissions regarding their

2  association with Sun Nong Dan were false and misleading. These false

3  advertisements have injured both consumers and Sun Nong Dan by dissatisfying Sun

4  Nong Dan's customers, diverting sales away from Sun Nong Dan, and causing

5  consumers to patronize Defendants' restaurants to their detriment.

6      109.  Due to Defendants' wrongful acts, Plaintiff has suffered injuries and

7  damages, including but not limited to lost sales and harm to Sun Nong Dan's

8  goodwill among existing, former, and potential customers.

9      110.  Defendants' actions have caused, and will continue to cause, immediate

10  and irreparable injury to Sun Nong Dan, including harm to its business, reputation,

11  and goodwill, for which there is no adequate remedy at law.

12      111.  Sun Nong Dan is entitled to an injunction restraining Defendants from

13  further engaging in false and misleading advertising.

14      112.  Additionally, Sun Nong Dan is entitled to restitution from Defendants.

**COUNT 7:**

**TRADE SECRET MISAPPROPRIATION**

**UNDER CALIFORNIA CIVIL CODE §§ 3426 <i>et seq.</i>**

18      113.  Sun Nong Dan re-alleges each and every allegation set forth in

19  paragraphs 1 through 112 above, inclusive, and incorporates them by reference

20  herein.

21      114.  Defendants' wrongful acts, as detailed above, constitute trade secret

22  misappropriation under California law. Defendants' wrongful conduct in

23  misappropriating Sun Nong Dan's trade secrets, unless enjoined and restrained by

24  this Court, will significantly and irreparably harm Sun Nong Dan's business.

25      115.  Sun Nong Dan lacks an adequate legal remedy for its current and future

26  injuries. This is especially true as Defendants' exploitation of Sun Nong Dan's trade

27  secrets has rapidly advanced their business, hindering Sun Nong Dan's entry into

28  markets in the San Francisco Bay Area and Las Vegas.

116.   Sun Nong Dan is entitled to damages for actual losses caused by Defendants' misappropriation of its trade secrets and/or any unjust enrichment enjoyed by Defendants. In the event that actual loss and unjust enrichment damages are not provable, Sun Nong Dan is entitled to receive a reasonable royalty for the use made of the trade secrets by Defendants, together with interest and costs as fixed by the Court.

117.   Defendants' willful and malicious misappropriation of Sun Nong Dan's trade secrets entitles Sun Nong Dan to exemplary damages, under California Civil Code Sections 3426.3(c) and 3426.4, equal to twice the actual damages caused by the misappropriation, along with reasonable attorney fees and costs, including expert witness fees.

## **PRAYER FOR RELIEF**

WHEREFORE, in consideration of the foregoing, Gravity prays for relief as follows:

1.     Judgment in Sun Nong Dan's favor on all claims herein;

2.     Preliminary and permanent injunctions preventing Defendants from continued infringement of Sun Nong Dan's intellectual property rights;

3.     Preliminary and permanent injunctions enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from their continued violations of the Lanham Act, California's UCL, California's FAL, and federal and state Trade Secret laws, including enjoining further false and misleading statements and requiring corrective advertising and disclosures;

4.     Preliminary and permanent injunctive relief pursuant to which Defendants and their employees, or representatives, and all persons acting in concert or participating with them are commanded, enjoined, or restrained, directly or indirectly, by any means whatsoever, as follows: (i) From disclosing Sun Nong Dan's trade secrets; (ii) From using Sun Nong Dan's trade secrets to make, offer to

sell, or sell products or services incorporating, using, or made using Sun Nong Dan's trade secrets; and (iii) To immediately destroy all trade secret information improperly acquired from Sun Nong Dan that Defendants could or would use to make, offer to sell, or sell products or services;

5.     An accounting and award of Defendants' illegal profits and unjust enrichment damages resulting from their trademark infringement, false advertising, trade dress infringement, unfair competition, and trade secret misappropriation;

6.     A trebling of any monetary award as a result of Defendants' willful and wanton conduct;

7.     Any applicable pre- and post-judgment interest;

8.     An award equal to Son Nong Dan's attorney's fees and costs; and

9.     For such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  November 17, 2023                 Respectfully submitted,


By:    /s/ Heedong Chae_____
        Heedong Chae
        LUCEM, PC
        Attorney for Plaintiff,
        SUN NONG DAN FOODS, INC.