UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUN NONG DAN FOODS, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>KANGNAM1957, INC., a California corporation; LA PARK'S MILPITAS, INC., a California corporation; HAN PAAN, INC., a California corporation; JJIM, INC., a California corporation; DAEHO LAS VEGAS, INC., a California corporation; DAEHO HWANG, an individual; IL PARK, an individual; CHAN WON PARK, an individual; DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.  2:23-cv-09779-WLH-RAO<br><br>**ORDER RE DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT [69]** |

    Before the Court is the Motion to Dismiss Plaintiff's Third Amended Complaint (the "Motion," Docket No. 69) brought by Defendants Kangnam1957, Inc.; La Park's Milpitas, Inc.; Han Paan, Inc.; Jjim, Inc.; and Daeho Las Vegas Inc. (collectively, "Daeho"), as well as Defendants Daeho Hwang, Il Park, and Chan Won Park (collectively with Daeho, "Defendants").  No party filed a written request for oral

argument stating that an attorney with five years or less of experience would be arguing the matter. (See Standing Order, Docket No. 7 at 16). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. Accordingly, the hearing set for November 22, 2024, is **VACATED**. For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion to Dismiss.

## I. BACKGROUND

### A. Procedural Background

Plaintiff Sun Nong Dan Foods, Inc. ("SND") alleges that Defendants stole SND's recipe for its "flagship" dish "galbi jjim" and opened a "counterfeit" restaurant offering the same dish. (Order on Defs' Mot. to Dismiss Second Amended Complaint ("Order on MTD SAC"), Docket No. 55 at 2-3). The Court previously detailed the facts of this case (*id.*) and supplements those facts only to the extent necessary to resolve the present motion.

Plaintiff has filed four complaints in the present action. (Docket Nos. 1, 23, 26, 58). On August 29, 2024, the Court granted in part and denied in part a Motion to Dismiss Plaintiff's Second Amended Complaint. (Order on MTD SAC). On September 19, 2024, SND filed a third amended complaint alleging the same seven causes of action include in its prior complaints: (1) false designation of origin, false and fraudulent representation, and federal unfair competition under 15 U.S.C. § 1125(a)(1)(A); (2) false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (3) trade dress infringement under 15 U.S.C. § 1125(a); (4) trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; (5) unfair competition under Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (6) false advertising under California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and (7) trade secret misappropriation under California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426 *et seq.* (Third Amended Complaint ("TAC") Docket No. 58).

As relevant to the present motion, the TAC Complaint includes additional allegations regarding Plaintiff's false advertising claims and trade secret misappropriation claims (*see generally* TAC), claims which the Court dismissed in a prior order. (Order on MTD SAC).

### B. TAC Allegations re: False Advertising

In the TAC, Plaintiff specifically alleges that "two job posts and the employee training in 2019 which involves the dissemination of false statements, constitute false commercial adverting." (TAC ¶ 119, 129). Plaintiff additionally alleges that employees spread false statements about Daeho and SND's affiliation. (TAC ¶ 118). Regarding statements made by Defendants and their employees, Plaintiff specifically alleges that a customer posted the following in a review on Yelp, a restaurant review website: "We asked a few questions [of employees] since this a new spot, and we learned the head Chef of Daeho was from KTown in LA." (TAC ¶ 125; Exh. L to TAC).

Regarding the job posts, Plaintiff alleges that in January and February of 2019, Daeho published job posts to SF Korean and go20.com. (TAC ¶ 43; Exhibit D to TAC ("Job Posts"), Docket No. 58-4). The job post published to SF Korean was titled: "[Job Opportunity] San Francisco Japan Town – A Jackpot Korean restaurant opening in February." (TAC ¶ 43; Job Posts at 2). The post stated, in full,

> We are looking for servers and kitchen staff to join our upcoming Korean food restaurant opening in early February in San Francisco's Japantown neighborhood.
> Former head chef of Sun Nong Dan in Los Angeles is preparing to open a new restaurant in San Francisco's Japantown.[1]
> The main menu will be tang (hot pot), and we'll be serving up some of the best hot pot and other dishes you've never had in San Francisco, like BBQ, galbi jjim, and galbi tang.
> Open 7 days a week, starting at 7am, part-time and full-time positions available.
> If you're interested in food, want to make money, or want to learn the restaurant business, we want to hear from you.

---

[1] Parties do not dispute that this sentence is a misrepresentation.

Energetic and enthusiastic people are welcome.

Contact us at 415-265-7212
Email inquiry hdh1130@gmail.com

Please contact us~~

Restaurant Address
1620 Post street
San Francisco, CA 94115

(Job Posts at 2.)

As reflected above, the post did not include the name of the restaurant, but did note the restaurant address. (*Id.*) As of September 2024, the SF Korean job post received 783,915 views. (TAC ¶¶ 46-47, 120-21; Exhibit D2 to TAC ("Job Posting Views"), Docket No. 58-5). Plaintiff alleges that SF Korean is the "most well-known media platform within the Korean community in the San Francisco Bay Area." (TAC ¶ 47). Plaintiff further alleges that "[f]or the Korean restaurants, recognition within the Korean Community is crucial for success." (*Id.* ¶¶ 48, 122). Plaintiff alleges that, "like other famous Korean restaurants," news about Daeho spread first among the Korean community and then to other ethnic groups. (*Id.*; *Id.* ¶ 49, 123)

### C. TAC Allegations re: Trade Secret Misappropriation

As in past complaints, Plaintiff alleges that Defendant C. Park sought employment at SND with the intent of stealing trade secrets which he then misappropriated with other Defendants. (TAC ¶ 38). Plaintiff's TAC includes additional allegations regarding trade secret misappropriation beyond those included in previous complaints. Plaintiff specifically alleges:

- "During his employment at Sun Nong Dan, Mr. C. Park worked at the Rowland Heights, San Gabriel, and Los Angeles 6th Street locations. At Sun Nong Dan Rowland Heights, he was part of the iron pot cooking team and was exposed to the recipes for soups used in galbi jjim. At the San Gabriel location, he worked

on the galbi jjim cooking team and was exposed to the recipes for galbi jjim. At the Los Angeles 6th Street location, he was part of the kimchi sauce cooking team and was exposed to the recipes for various kimchi sauces. Throughout his time working at these different locations, Mr. C. Park gained knowledge of Sun Nong Dan's confidential recipes and business operations." (*Id.* ¶ 34).

- "Deaho [sic] Kalbijjim's galbi jjim and three side dishes have identical or nearly identical tastes and flavors to those of Sun Nong Dan, as noted by numerous Yelp reviewers. [Excerpts from Yelp Reviews noting the similarities between Daeho and SND's galbi jiim]." (*Id.* ¶ 75).

- "Furthermore, Daeho misappropriated Sun Nong Dan's confidential galbi preparation method, which has the benefit of the meat easily falling off the bone, as noted by the Yelp review [describing similarity in texture]. The shape of galbi and the same or similar taste of the galbi jjim further support the claim that Daeho misappropriated Sun Nong Dan's confidential galbi preparation method." (*Id.* ¶ 76).

- "In addition, Daeho misappropriated Sun Nong Dan's confidential culinary processes and business operations designed to efficiently handle a large volume of orders for galbi jjim, including order-taking, cooking, the use of specialized cooking equipment, and serving methods tailored for quick handling of large-scale orders which preserving the deep flavors of galbi jjim. Specifically, Daeho misappropriated galbi jjim cooking method, the use of specialized cooking equipment and order-taking method . . . ." (*Id.* ¶ 77).

SND's complaint includes additional allegations that Daeho stole and misappropriated SND's order-taking method. (*Id.* ¶ 78).

### D. The Present Motions

In response to Plaintiff's TAC, Defendants filed the present Motion to Dismiss. (Docket No. 69). Defendants specifically move to dismiss Plaintiff's state and federal false advertising claims (Counts II and VI) and Plaintiff's state and federal trade secret

5

claims (Count IV and Count VII). Defendants did not move to dismiss Counts I, III and V of the Complaint. In support of Plaintiff's Opposition to Defendants' Motion to Dismiss, Plaintiff submits a Declaration from SND's CEO, Gyeongryeol Lee. (Lee Decl., Docket 43-1). Defendants object to the document and move to strike it. (Objection and Motion to Strike, Docket No. 45 at 1).

## II.  MOTION TO STRIKE

In support of Plaintiff's opposition brief, Plaintiff submits a Declaration from SND's CEO, Gyeongryeol Lee. (Lee Decl., Docket 43-1). The Declaration includes screenshots of publicly accessible websites as exhibits, links to Yelp reviews and additional information on SND's alleged trade secrets. (*See generally Id.*). Defendants object to the document and move to strike it on the basis that the document presents evidence "extrinsic to the TAC." (Objection and Motion to Strike at 1).

In deciding a Rule 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The Court, therefore, cannot consider the Lee Declaration at this stage of litigation. *Fisher v. Nissel*, No. CV 21-5839-CBM-(KSX), 2022 WL 16961479, at *2 (C.D. Cal. Aug. 15, 2022) (striking declaration in support of plaintiff's opposition to defendant's motion to dismiss); *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1020 (C.D. Cal. 2015) ("Courts regularly decline to consider declarations and exhibits submitted in support of or opposition to a motion to dismiss, however, if they constitute evidence not referenced in the complaint or not a proper subject of judicial notice.").[2] Accordingly, the Court **SUSTAINS** Defendants' objections and **STRIKES** Plaintiff's Declaration.

---

[2] The Lee Declaration is not filed as a request for judicial notice and Plaintiff makes no showing that the facts included within the declaration are appropriate for judicial notice under Fed. R. Evid. 201(b).

6

### III. MOTION TO DISMISS

The Court **DENIES** in part and **GRANTS** in part Defendants' Motion.

#### E. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for failure to state a claim upon which relief can be granted. A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

In deciding a Rule 12(b)(6) motion, a court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). Plaintiffs typically need only provide sufficient factual material to "plausibly" state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678.

When a plaintiff alleges claims that "sound in" or are "grounded in fraud," however, Rule 9(b) imposes a heighted pleading standard. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1102–06 (9th Cir. 2003); *Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC*, 404 F. Supp. 2d 1214, 1219–20 (E.D. Cal. 2005). Under Rule 9(b), plaintiffs must "state with particularity the circumstances constituting fraud," Fed. R. Civ. P 9(b), including the "who, what, when, where, and how" of the fraudulent activity. *United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

//
//

A. **False Advertising Under the Lanham Act and FAL (Counts II & VI)**

Plaintiff brings claims for false advertising under the Lanham Act and the FAL. A false advertising claims requires that alleged false statement be part of a "commercial advertisement about [defendant's] own or another's product." *BHRS Grp., LLC v. Brio Water Tech., Inc.*, 553 F. Supp. 3d 793, 799 (C.D. Cal. 2021); *see also Allergan USA, Inc. v. Prescribers Choice, Inc,* 364 F. Supp. 3d 1089, 1108 (C.D. Cal. 2019) (describing congruence between claims made under the FAL and the Lanham Act). Commercial advertising, in turn, is "(1) commercial speech, (2) by the defendant who is in commercial competition with the plaintiff, (3) for the purpose of influencing consumers to buy defendant's goods or services, and (4) that is sufficiently disseminated to the relevant purchasing public." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114–15 (9th Cir. 2021) (citing *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999)). For the purposes of the last prong, for dissemination to be "sufficient," it must "be part of an organized campaign to penetrate the relevant market, which typically involves widespread dissemination within the relevant industry." *Id*. at 1121 (citation and quotations omitted). Rule 9(b)'s heigted pleading standard applies to false advertising claims. (Order on MTD SAC at 9 (citing *Epicor Software Corp. v. Alternative Tech. Solutions, Inc.*, No. SACV 13-00448, 2013 WL 2382262, at *4 (C.D. Cal. May 9, 2013))).

In Plaintiff's prior Second Amended Complaint, Plaintiff largely based its false advertising claims on general allegations that Defendants intentionally mispresented to customers that Daeho and SND were affiliated. (Order on MTD SAC at 9; SAC ¶ 94 – 113). Plaintiff supported its allegations with social media comments made by members of the public reflecting a belief that Daeho and SND were affiliated. Plaintiff also specifically alleged that Mr. C. Park falsely represented himself as a former head chef of Sun Nong Dan through job postings. (Order on MTD SAC at 9; SAC ¶¶ 94 – 113). The Court dismissed the false advertising claims because the

1  general allegations of intentional misrepresentation failed to meet the heighted 9(b)
2  pleading standard and because the allegations regarding job postings and social media
3  comments "do not constitute actionable false advertising." (Order on MTD SAC at
4  9). Regarding the job posts, the Court found that because the posts were written in
5  Korean and targeted the Korean working population in San Francisco, the postings
6  were not "disseminated sufficiently to the relevant purchasing public." (*Id.* at 9-10).

7  In its Third Amended Complaint, Plaintiff supplements false advertising
8  allegations in two ways. First, Plaintiff alleges that "the employee training in 2019,
9  which involves the dissemination of false statements, constitute[d] false commercial
10 adverting." (TAC ¶ 129). Second, Plaintiff provides additional allegations regarding
11 the job posts, which similarly including false statements. (*See* TAC ¶¶ 46-49, 120-
12 123).

13 Plaintiff alleges that the employee training in 2019, where I. Park allegedly
14 instructed Daeho employees to make false statements about Daheo Kalbijjim's
15 relationship with SND, constitutes false commercial advertising. (TAC ¶ 129).
16 Plaintiff supports this claim with an allegation that one customer wrote a Yelp review
17 noting: "We asked a few questions [of employees] since this a new spot, and we
18 learned the head Chef of Daeho was from KTown in LA." (TAC ¶ 125; Exh. L to
19 TAC). In its prior Order, the Court found that Plaintiff met the Rule 9(b) pleading
20 standard as to the allegation that I. Park instructed employees to mislead customers
21 (Order on MTD SAC at 8), yet still dismissed Plaintiff's false advertising claim. (*Id.*
22 at 9-10). The additional allegation of the Yelp review does not change the Court's
23 conclusion. The Yelp review does not reflect that the employee made a false
24 statement as part of a "commercial advertisement about [defendant's] own or
25 another's product." *See BHRS Grp.,* 553 F. Supp. 3d at 799. Instead, the allegation
26 indicates that an employee answered a customer's questions with an undisputed fact—
27 that the chef had worked in Koreatown in Los Angeles.
28

9

1    Plaintiff additionally alleges that two job postings published by Daeho
2    constitute false advertising, including one posted to SF Korean. (TAC Plaintiff ¶
3    129). In an attempt to cure deficiencies the Court identified in its previous order,
4    Plaintiff provides additional allegations regarding the job postings. (*See supra*
5    Section II). Plaintiff specifically alleges that for Korean restaurants, "recognition
6    within the Korean community is crucial to success," that SF Korean is the most well-
7    known media platform within the Korean community in the San Francisco Bay Area,
8    and that Daeho's job posting on SF Korean has been viewed 783,915 times as of
9    September. (TAC ¶¶ 46-49, 120-123).

10   Job posts can be commercial speech. *Pittsburgh Press Co. v. Pittsburgh
11   Comm'n on Hum. Rels.*, 413 U.S. 376, 385 (1973) (holding that a job advertisement in
12   question is commercial speech). Daeho does not dispute that it published the job post
13   nor that it is in commercial competition with SND. (*See generally* Mot.). Construing
14   the Complaint in the light most favorable to the Plaintiff, Plaintiff now properly
15   alleges the fourth element of commercial advertising—that the job post was
16   "sufficiently disseminated to the relevant purchasing public." (*See* TAC ¶¶ 46-49,
17   120-123 (alleging that users of SF Korean are relevant purchasing public and noting
18   783,915 views on that site). Plaintiff, however, has still failed to plead the third
19   element of commercial advertising—that Daeho published the job post with "the
20   purpose of influencing consumers to buy defendant's goods or services." *Ariix*, 985
21   F.3d at 1115.

22   Based on the allegations before the Court, the Court cannot reasonably infer
23   that Daeho published the job post as a means of influencing consumers. The job post
24   itself is directed at potential employees, not potential customers. The post is labeled
25   "Job Opportunity," opens with "we are looking for servers and kitchen staff to join
26   our upcoming Korean food restaurant," notes part-time and full-time positions, and
27   encourages those interested to contact provided contact information. (Job Posts).
28   While the post does note that the restaurant will "be serving up some of the best hot

pot and other dishes you've never had in San Francisco, like BBQ, galbi jjim, and galbi tang," given the context of the rest of the post, the Court cannot fairly read the post as designed to influence customers to buy Daeho's goods or services. (*Id.*) Indeed, the post does not note Daeho's name. (*Id.*) Finally, allegations regarding the reach of the job posts and customer's confusion about the relationship between Daeho and SND do not speak to *Daeho's purpose* in publishing the job post. Without factual allegations that the job post was made to influence customers, Plaintiff's false advertising claims are analogous to claims that courts have dismissed because the false statements were not made to influence purchasing decisions. *Allergan, Inc. v. Merz Pharms.*, LLC, No. SACV 11-446 AG (EX), 2011 WL 13323246, at *2 (C.D. Cal. Nov. 14, 2011) (dismissing claims based on false statements made to investors); *Alfasigma USA, Inc. v. First Databank, Inc.*, 525 F. Supp. 3d 1088, 1096 (N.D. Cal. 2021) (dismissing claims based on false statements in a user database).

This is Plaintiff's fourth attempt at filing a complaint. Therefore, and for the foregoing reasons, Plaintiff's Motion is **GRANTED** as to the false advertising claims as set forth in Counts II and VI are dismissed with prejudice, without leave to amend.

### B. Trade Secret Misappropriation Under DTSA & CUTSA (Counts IV & VII)

SND claims trade secret misappropriation under the DTSA and the CUTSA. Under both statutes, "a plaintiff must allege that: (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (citation and quotation omitted).

In a prior order, the Court found that SND adequately pled that its recipes were trade secrets. (Order on MTD SAC at 13). By contrast, the Court found that because Plaintiff made only conclusory allegations that C. Park "obtained and stole Sun Nong Dan's various confidential proprietary recipes and business practices" without factual

allegations, Plaintiff failed to adequately allege misappropriation of those trade secrets. (*Id.* at 14).

Construing the TAC in the light most favorable to Plaintiff, Plaintiff has alleged sufficient facts to state a claim that Defendants misappropriated SND galbi jjim recipe and cooking method. Plaintiff has provided factual allegations regarding C. Park's exposure to the relevant recipes and cooking methods. (TAC ¶ 34). Plaintiff has further alleged specific facts regarding the similarity of the galbi jjim dishes offered by SND and Daeho, respectively. (*Id.* ¶¶ 75-76). Finally, Plaintiff has alleged that C. Park misrepresented to SND his reason for leaving the restaurant. (*Id.* ¶ 34) ("In 2018, after working for less than a year, Mr. C. Park left Sun Nong Dan, expressing an interest in starting a Chinese restaurant venture.") These factual allegations amount to more than "mere allegations that [defendant] left Plaintiffs' employ for a competitor who also sells [similar] products," *MACOM Tech. Sols. Inc. v. Litrinium, Inc.*, No. SACV19220JVSJDEX, 2019 WL 4282906, at *9 (C.D. Cal. June 3, 2019), and plausibly give rise to the inference that Plaintiff acquired and misappropriated SND's trade secret recipe and cooking methods. *See Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, Case No. 19-cv-05611-PJH (N.D. Cal. Jan. 31, 2020) (finding plaintiff adequately alleged misappropriation of a trade secret when complaint alleged how defendant gained access to secrets and specifically identified the trade secrets defendant used). For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's trade secret misappropriation claims insofar as the claims rest on allegations that Defendants misappropriated recipes and cooking methods.

Plaintiff's TAC includes allegations that Defendants misappropriated SND's order-taking method, "which involves accepting pre-orders before seating customers." (*See, e.g.*, TAC ¶ 78). Plaintiff has not and cannot allege that SND's order-taking method is a trade secret because it cannot show that SND "attempts to keep secret" the method. *See InteliClear, LLC v. ETC Glob. Holdings, Inc., 978 F.3d 653, 657* (9th Cir. 2020). The allegations cannot "possibly be cured by the allegation of other facts"

because Plaintiff cannot allege that the method by which the restaurant solicits customers' orders—which any patron is exposed to by virtue of visiting the restaurant—is a trade secret. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). As such, to the extent that Plaintiff's claims rely on allegations regarding Daeho's order-taking method, the Court GRANTS Defendants' Motion to Dismiss without leave to amend.

## IV. CONCLUSION

Based on the foregoing discussion, Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

Dated: 11/19/2024

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE